

6 POMPTON AVENUE, SUITE 25
CEDAR GROVE, NJ 07009
(973) 239-4300

LORRAINE GAULI-RUFO
LORRAINE@LGRLAWGROUP.COM
WWW.LGAULIRUFO.COM
FAX: (973) 239-4310

January 13, 2022

*Via ECF*

Hon. Andrew L. Carter, Jr.
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      **Re:**   *United States v. Dyquan Christopher*

             19-cr-828-002 (ALC)

Dear Judge Carter,

    This sentencing memorandum is submitted on behalf of Dyquan Christopher (hereinafter, "Mr. Christopher") who is scheduled to be sentenced by Your Honor on January 20, 2022. Mr. Christopher respectfully asks Your Honor to impose the mandatory minimum sentence of 60 months imprisonment. For the reasons set forth herein, such a sentence is sufficient but not more than necessary to satisfy the goals of sentencing.

    **I.**    **Procedural History**

    Mr. Christopher was charged by way of Indictment with a conspiracy to distribute and possess with intent to distribute 280 grams and more of crack cocaine/cocaine base in violation of 21 U.S.C. § 841(b)(1)(A), and related charges. PSR ¶ 2. On September 3, 2021, pursuant to the plea agreement, Mr. Christopher entered a plea of guilty under Count 1 to the lesser included offense of a conspiracy to distribute and possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(b)(1)(B). PSR ¶ 6.

    The plea agreement stipulates that the base offense level applicable to Mr. Christopher is a level 30 which would be reduced to a level 27 for acceptance of responsibility, and a Criminal History Category is II. PSR ¶ 6. Given these stipulations, the advisory Sentencing Guideline

range is 78 to 97 months imprisonment with a mandatory minimum of 60 months. PSR ¶ 6. Were crack and cocaine powder given equal enhancements under the Sentencing Guidelines, Mr. Christopher would be facing as sentence of between 21 and 27 months instead of 78 to 97 months. For the reasons set forth below, Mr. Christopher is seeking a downward variance to 60 months incarceration, which he submits is a sentence that is sufficient but not greater than necessary to comply with the statutory purposes of sentencing.

**II. Background**

    **A. Upbringing and Family Life**

Mr. Christopher was born on April 10, 1994, in New York City to Vincent Christopher and Laura Robinson. PSR ¶ 50. His parents' relationship ended when Ms. Robinson was still pregnant with Mr. Christopher, and his father resides in North Carolina. PSR ¶ 50. Mr. Christopher grew up in the Bronx, and his father never lived with or near the family. PSR ¶ 52. Mr. Christopher had occasional contact with this father when his father would sporadically visit New York during his childhood, and Mr. Christopher traveled to North Carolina to visit his father on one occasion, but all communication and contact ceased when Mr. Christopher was approximately 13 years old. PSR ¶ 53. In the words of Mr. Christopher's mother, his father "did not want to be bothered" with having a relationship with his son, and his father never provided any financial support for Mr. Christopher or the family. PSR ¶ 55.

    **B. Education and Employment**

Mr. Christopher graduated from high school. PSR ¶ 54. Mr. Christopher has worked at various jobs while in high school and throughout his adult life. These positions included working at a martial arts school, an internship as a teacher's assistant for a Pre-Kindergarten and Kindergarten program at Central Park East Elementary School, working as a caretaker for his adoptive brother, working retail at Forever 21, and work in construction – particularly painting and flagging. PSR ¶ 54.

    **C. Health and Wellbeing**

Mr. Christopher is eager and willing to engage in counseling and mental health treatment. PSR ¶ 61. Among other things, Mr. Christopher has experienced trauma with the murder of his friend, and he does not have any family or friends with whom he feels he can talk about that trauma or other emotional and mental issues he is dealing with. PSR ¶ 61. There can be no doubt that Mr. Christopher's willingness and desire to engage in counseling and treatment will have a profound impact on him and do a great deal to minimize or eliminate any potential recidivism upon the completion of his sentence. Mr. Christopher also lost another friend just recently who was shot just outside Mr. Christopher's residence. He is extremely shaken up about this most recent loss of a close friend.

Mr. Christopher has a history of marijuana and alcohol abuse. He first used marijuana at the age of 14 and began smoking daily at the age of about 18. PSR ¶ 64. He would smoke multiple times per day, and he has used marijuana largely as a means of self-medicating in the absence of counseling and psychotherapy. PSR ¶ 65. He first drank alcohol at the age of 17 and has also used alcohol as a means of self-medication on occasion. PSR ¶ 63.

### III. The Offense

Between approximately August 2018 and November 2019, law enforcement officers conducted some 127 controlled purchases of crack/cocaine from members of the conspiracy with a total weight of approximately 297 grams. PSR ¶ 12.  With respect to Mr. Christopher, only about 9 controlled purchases were conducted over about 5 months. PSR ¶ 19. Mr. Christopher was arrested and detained on November 21, 2019 and released soon after.  PSR ¶ 22.  Mr. Christopher accepted responsibility for his involvement in this conspiracy.

### IV. **Application of the USSG and 3553(a)**

While the Guidelines range is one factor the sentencing court must consider, this factor must be considered together with all the other factors of this section. "[T]he Sentencing Guidelines are just that, guidelines, and … 'they truly are advisory'" *Douglas*, 713 F.3d at 700 (quoting *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*). This Court "may not presume that the Guidelines range is reasonable," but rather "must make an individualized assessment based on the facts presented" *Gall v. United States*, 552 U.S. 38, 50 (2007).

In determining the sentence to impose, the sentencing court should take as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a)" *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013). That provision directs sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with' the purposes of sentencing, which are those set forth in 18 U.S.C. § 3553(a)(2)," namely, "proportionality, deterrence, incapacitation, and rehabilitation." *Id*. See also, e.g., *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006). "[D]istrict courts may impose sentences … based on appropriate consideration of all the factors listed in § 3553(a)." *Pepper v. United States,* 131 S. Ct. 1229, 1241 (2011). Those factors are, in part:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant.
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3

(3) the kinds of sentences available;…
(5) any pertinent policy statement;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.
18 USC § 3553(a).

In this matter, the facts set forth herein show that a sentence of 60 months is sufficient, but not greater than necessary to satisfy the purposes of sentencing.

### A. Mr. Christopher's Character and Background

The Court must consider the person of Mr. Christopher – his background, age, family history, and all the many factors that make a person who they are, as set forth above in detail. A look into his background sheds volumes of light on why he is where he is today. Mr. Christopher had an incredibly traumatic experience as a child whose father was not only absent but made it clear that he did not want to be bothered with having a relationship with his son. The lack of an in-tact nuclear family from that time on clearly had a dramatic effect on Mr. Christopher. Ever since, he has felt as though he had to deal with everything by himself, unable to rely on others to talk through other traumas in his life and instead turning to marijuana and alcohol to self-medicate.

Mr. Christopher has submitted many letters from family and friends in support of the sentencing request herein, which are attached hereto as "Exhibit A." These letters demonstrate the tremendous love and support that these people have for Mr. Christopher, and shed light on caring, helpful and loving side of Mr. Christopher.

By way of example, Mr. Christopher's brother writes of how Mr. Christopher is "a wonderful uncle to his niece and nephews…he's a breath of fresh air always the life of our family, if anyone was down feeling sad, he would always find a way to bring joy to that person whether it be cooking dinner making jokes or playing their favorite song…" *See* Exhibit A at p. 001. His mother writes of his "helpful nature, and kind gestures in society." *Id.* at 002. His friend, Caleb, gets to the heart of the matter by observing that "he just needs more people to believe in him so that he can become the person I know he can be." *Id.* at 003. Mr. Christopher's sister observes that "he is humble, kind and respectful of other's feeling." *Id.* at 004. His aunt further observes that he is a "motivated young man with good moral character," and describes how he is such a "great help to his nieces, nephews, peers and other family members. He has provided and helped me with guiding and mentoring my son his cousin to stay on the right track with school and behavior." *Id.* at 005. The clear through line in these letters is Mr. Christopher's selflessness and willingness to help others, which is perhaps the best quality possible to provide a solid foundation for rehabilitation.

### B. Nature of the Offense.

Mr. Christopher sold crack/cocaine in small amounts on at least 9 occasions and conspired with others to do the same. He accepts the wrongfulness of his actions and decisions in this regard.

**C. Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense; to Afford Adequate Deterrence to Criminal Conduct; to Protect the Public from further Crimes of the Defendant; and to Provide the Defendant with Needed Educational or Vocational Training, Medical care, or other Correctional Treatment.**

With a sentence of 60 months, the purposes of sentences set forth in this section can be achieved. It is a substantial sentence that amounts to far more time than he has ever served in custody. This sentence will promote respect for the law and is just punishment for the crime. This sentence affords adequate deterrence to criminal conduct – again, a 60-month sentence is a substantial sentence that will send a clear message to similarly situated people. He will be incarcerated for some 5 years and not in his community. Moreover, a sentence of 60 months provides Mr. Christopher with ample time to obtain needed educational and vocational training, and to participate in other programs that can help him continue to change his life.

Given Mr. Christopher's professed willingness to rehabilitate, seek counseling and treatment for unaddressed emotional, psychological, and substance abuse issues, a sentence of 60 months is sufficient to accomplish the sentencing goals of § 3553(a)(2).

**D. The Need to Avoid Unwarranted Sentencing Disparities**

Sentencing courts shall consider "the need to avoid unwarranted sentence disparities" 18 U.S.C. § 3553(a)(6). This concern lies not only with disparities between co-defendants in a single case, or separately charged defendants in the same jurisdiction, but with similarly situated defendants across the nation. "Congress established the Commission to formulate and constantly refine national sentencing standards." *Kimbrough v. United States*, 552 U.S. 85, 108 (2007). While this goal is no doubt appropriate and admirable, and the Guidelines can arguably be helpful in this regard, it is critical to be mindful of the Congressional intent in this regard, and how a particular sentencing judge in a particular case with a particular defendant might best effectuate that intent.

The sentencing judge has "greater familiarity with...the individual case and the individual defendant before him than the Commission or the appeals court." *Rita v. United States*, 551 U.S. 338, 357 – 358 (2007). The sentencing judge is therefore "in a superior position to find facts and judge their import under § 3553(a)" in each particular case. *Gall v. United States*, 552 U.S. 38 at 51 (2007); *see also Kimbrough* at 109. Along these lines, this concern of disparate sentencing across the county not only pertains to defendants facing similar or identical charges, but with similarities and differences between defendants in terms of their actual, specific conduct.

"Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity. *See* 28 U.S.C. § 991(b)(1)(B); *see also* § 994(f). That uniformity does not consist simply of similar sentences for those convicted of violations of the same statute...It consists, more importantly, of similar relationships between sentences and real conduct, relationships that Congress' sentencing statutes helped to advance." *United States v. Booker,* 543 U.S. 220, 253–54 (2005). "Congress enacted the sentencing statutes in major part to achieve greater uniformity in sentencing, i.e., to increase the likelihood that offenders who engage in similar real conduct would receive similar sentences." *Id.* at 255. "...Congress' basic statutory goal—a system that diminishes sentencing disparity—depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction." *Id.* at 250 (2005).

1. **The Crack vs. Powder Disparity is Glaring In Mr. Christopher's USSG Calculation**

As referenced in the PSR, the Government and Mr. Christopher have stipulated to an applicable Guidelines range of 78 to 97 months, and an applicable mandatory minimum of 60 months incarceration. PSR ⁋ 6. However, it is critically important to note the incredible and unjust disparity between the treatment of crack/cocaine and powder cocaine in the context of the Guidelines, and the current strides made recently to equalize them. The EQUAL Act bill overwhelmingly passed in the House of Representatives in September 2021.  The EQUAL act stands for  the Eliminating a Quantifiably Unjust Application of the Law (EQUAL) Act, S. 79 (IS), 117th Congress (2021), that would eliminate the federal crack-cocaine/powder cocaine sentencing disparity entirely and apply it retroactively.

The Department of Justice ("DOJ") issued a statement on June 22, 2021 before the Judiciary Committee of the United States Senate entitled "Examining Federal Sentencing for Crack and Powder Cocaine." In urging Congress to pass the Equal Act, the DOJ asserted that **"[t]he crack/powder sentencing disparity has unquestionably led to unjustified differences in sentences for trafficking in two forms of the same substance, as well as unwarranted racial disparities in its application."** The DOJ continued that '[t]he sentencing disparity was based on misinformation about the pharmacology of cocaine and its effects," and "we believe it is long past time to end the disparity in sentencing policy between federal offenses involving crack cocaine and those involving powder cocaine."

Mr. Christopher understands that the EQUAL Act is not yet law, and that the Court must make findings with respect to sentencing under the current law. However, because this is a factor Your Honor can consider pursuant to 18 USC § 3553(a), Mr. Christopher asks that Your Honor take into account that the Government and Mr. Christopher apparently agree that the crack/powder disparity with respect to sentencing is fundamentally inappropriate for many reasons, not the least of which, as noted by the DOJ, is that "[t]he disparity in federal cocaine sentencing policy has been the most visible symbol of racial unfairness in the federal criminal justice system for almost 35 years, and it is time to eliminate it."

Simply put, it seems all would agree that to sentence Mr. Christopher, or any defendant, based on a fundamentally flawed and unfair sentencing scheme in this regard would be a gross miscarriage of justice. And the gross disparity in the effects of the Guidelines in a crack versus

powder case could not be more apparent than in this case. For, if the Court were to apply the powder cocaine base offense level to the crack attributed to Mr. Christopher, it would result in a base offense level of **18 instead of 30**, a **total offense level (after acceptance of responsibility) of 15 rather than 27,** and a **Guidelines range of 21 to 27 months rather than 78 to 97 months,** well below the mandatory minimum**.** The difference in advisory sentences in this case as to crack versus powder cocaine is substantial.  The increase in the bottom of the applicable range goes from 21 (for powder) to 78 (for crack) – a 59-month increase.

      Mr. Christopher urges that Your Honor can and should consider this factor when fashioning a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing, including the factors set forth in 18 USC § 3553(a). Mr. Christopher respectfully requests that Your Honor consider this argument as a basis for a variance from the currently applicable Guideline range down to 60 months, the mandatory minimum term or imprisonment.

**VI. Conclusion**

      Given all the factors and circumstances referenced herein, it is respectfully submitted that a period of incarceration of 60 months would be sufficient, but not more than necessary in this case. Mr. Christopher respectfully requests that the Court impose such a sentence.

                                   Respectfully submitted,
                                      s/
                                 Lorraine Gauli-Rufo
                                 *Attorney for Dyquan Christopher*

cc:  Mary E. Bracewell, AUSA
     Ryan B. Finkel, AUSA